**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee*,

v.

MONIQUE A. LOZOYA,
        *Defendant-Appellant.*

No. 17-50336

D.C. No.
2:16-cr-00598-
AB-1

OPINION

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Submitted En Banc May 26, 2020[*]
San Francisco, California

Filed December 3, 2020

Before: Sidney R. Thomas, Chief Judge, and M. Margaret
McKeown, William A. Fletcher, Jay S. Bybee, Sandra S.
Ikuta, Jacqueline H. Nguyen, Paul J. Watford, John B.
Owens, Mark J. Bennett, Daniel P. Collins and Kenneth K.
Lee, Circuit Judges.

Opinion by Judge Bennett;
Partial Concurrence and Partial Dissent by Judge Ikuta

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Criminal Law

The en banc court affirmed a conviction for misdemeanor assault within the special aircraft jurisdiction of the United States, in a case in which the defendant, who committed the assault on a commercial flight from Minneapolis to Los Angeles, argued that venue in the Central District of California was improper because the assault did not occur in airspace directly above the Central District.

The en banc court held that the Constitution does not limit venue for in-flight federal crimes to the district sitting directly below a plane at the moment a crime was committed, and that venue thus "shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. art. III, § 2, cl. 3. The en banc court held that the second paragraph of 18 U.S.C. § 3237(a) applies to federal crimes committed on commercial aircraft within the special aircraft jurisdiction of the United States, and that such crimes may be prosecuted in the flight's landing district.

Dissenting in part and concurring in the judgment, Judge Ikuta, joined by Judges Collins and Lee, wrote that under the correct venue statute, 18 U.S.C. § 3238, the trial for an assault on a cross-country flight can be held only where the defendant "is arrested or is first brought," or where the defendant resides.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Hilary Potashner, Federal Public Defender; James H. Locklin, Deputy Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Nicola T. Hanna, United States Attorney; Lawrence S. Middleton, Chief, Criminal Division; Karen E. Escalante, Assistant United States Attorney, Major Frauds Section; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

**OPINION**

BENNETT, Circuit Judge:

Defendant Monique Lozoya committed an assault on an airplane. She was traveling on a commercial flight from Minneapolis to Los Angeles when she argued with another passenger and slapped him in the face. Lozoya was convicted of misdemeanor assault in the Central District of California, where the plane landed. On appeal, Lozoya argues that venue in the Central District was improper because the assault did not occur in airspace directly above the Central District. We hold that venue for in-flight federal offenses is proper in the district where a plane lands, and affirm Lozoya's conviction.

**FACTS AND PROCEDURAL BACKGROUND**

On July 19, 2015, Lozoya and her boyfriend were flying home to California from Minneapolis. Their Delta Airlines flight to Los Angeles was scheduled for about three-and-a-

half hours, the route taking them over Minnesota, Iowa, Nebraska, Colorado, Utah, Arizona, Nevada, and California.

Lozoya wanted to sleep, but claimed the passenger behind her, Oded Wolff, kept jabbing at his touchscreen monitor attached to the back of her seat. Each jab startled her awake. In the middle of the flight—Lozoya estimated an hour before landing, her boyfriend about two hours, and a flight attendant ninety minutes—Lozoya turned to Wolff, who had just returned from the bathroom, and asked him to stop banging on her seat. An argument ensued, and Lozoya slapped Wolff's face. Flight attendants intervened. After the plane landed at LAX, Lozoya and Wolff went their separate ways. Wolff reported the incident to the FBI, which issued Lozoya a violation notice charging her with misdemeanor assault within the special aircraft jurisdiction of the United States. *See* 18 U.S.C. § 113(a)(5); 49 U.S.C. § 46506.

Lozoya's bench trial took place in the flight's landing district, the Central District of California. After the government rested, Lozoya moved for acquittal, claiming the government had not established venue in the Central District. *See* Fed. R. Crim. P. 29. The magistrate judge presiding over the trial denied the motion and ruled that venue was proper because the flight "came to an end" in the Central District. Lozoya was convicted and sentenced to pay a fine of $750. She then appealed to the district court, again arguing that venue was improper in the Central District. The district court found that venue was proper because the plane had landed in the Central District and affirmed the conviction. A divided three-judge panel of our court, however, agreed with Lozoya that venue was improper and reversed the conviction on that ground. *United States v.*

*Lozoya*, 920 F.3d 1231, 1243 (9th Cir. 2019). We took this case en banc.

We have jurisdiction under 28 U.S.C. § 1291 and review de novo whether venue was proper in the Central District of California. *See United States v. Ruelas-Arreguin*, 219 F.3d 1056, 1059 (9th Cir. 2000). "Venue is a question of fact that the government must prove by a preponderance of the evidence." *United States v. Lukashov*, 694 F.3d 1107, 1120 (9th Cir. 2012).

## DISCUSSION

The assault took place on a commercial flight in the "special aircraft jurisdiction of the United States." 49 U.S.C. § 46501(2). Decades ago, at the onset of the "age of jet aircraft," Congress recognized that crimes committed in the skies raise difficult questions: "Although State criminal statutes generally cover crimes committed on board aircraft in flight over the State, the advent of high-speed, high-altitude flights of modern jet aircraft has complicated the problem of establishing venue for the purposes of prosecution. In some recent instances, serious offenses have gone unpunished because it was impossible to establish to any reasonable degree of accuracy the State over which the crime was committed." H.R. Rep. 87-958 (1961), *reprinted in* 1961 U.S.C.C.A.N. 2563, 2564. Congress chose to federalize certain offenses committed on airplanes, including murder, sexual assault, and Lozoya's crime— simple assault. *See id.* at 2563; 49 U.S.C. § 46506.

Lozoya contends that venue is proper only in the federal district over which the in-flight assault occurred, which was

not the Central District.**[1]**  We reject that contention.  Under 18 U.S.C. § 3237(a), venue is proper in the landing district, here the Central District of California.  Thus, we affirm Lozoya's conviction.**[2]**

## I.  Constitutional Requirements

Criminal venue mattered to the Framers, who complained in the Declaration of Independence that King George transported colonists "beyond Seas to be tried."  The Declaration of Independence, para. 21 (U.S. 1776).  The Framers designed a system that requires trial in the vicinity of the crime, "to secure the party accused from being dragged to a trial in some distant state, away from his friends, witnesses, and neighborhood."  *United States v. Muhammad*, 502 F.3d 646, 652 (7th Cir. 2007) (quoting Joseph Story, Commentaries on the Constitution § 925 (Carolina Academic Press reprint 1987) (1833)).

The Constitution safeguards a criminal defendant's venue right in two places.  The Venue Clause of Article III, Section 2 provides: "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed."  U.S. Const. art. III, § 2, cl. 3.  The Sixth

---

**[1]** It is undisputed that the assault happened before the plane entered airspace above the Central District, but it is unclear which district was below the plane during the assault.

**[2]** We exercise our discretion to consider only this issue.  *See Summerlin v. Stewart*, 309 F.3d 1193 (9th Cir. 2002); *see also Rand v. Rowland*, 154 F.3d 952, 954 n.1 (9th Cir. 1998) (en banc).  Parts I and II.A of the panel majority opinion, concerning the Speedy Trial Act and waiver issues, *United States v. Lozoya*, 920 F.3d 1231, 1236–38 (9th Cir. 2019), are not affected by our en banc review and are not withdrawn.

Amendment's Vicinage Clause further requires that the defendant be tried by an "impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Under these two provisions, criminal trials generally must take place in the same state and district where the crime took place. But if the crime was "not committed within any State," the Constitution provides that "the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. art. III, § 2, cl. 3.

The Constitution does not discuss the airspace over the several states. Nor did the Framers contemplate crimes committed in the "high skies," even as they granted Congress the power to "define and punish Piracies and Felonies committed on the high Seas." U.S. Const. art. I, § 8, cl. 10. Lozoya's crime would have been alien to the Framers. It happened on an airplane flying almost 600 miles an hour, five miles above the earth. And it occurred over one of several states or districts, depending on the time of the slap.

In Lozoya's view, the Constitution requires trial in the district over which the plane was flying at the exact moment of the assault. Her crime was committed in the airspace above a district, the argument goes, so that district was the location of her crime. Implicit in this reasoning is an interpretation of Article III and the Sixth Amendment that a state or district includes the airspace above it for constitutional venue purposes. Lozoya was not tried in the flyover district but in the Central District of California, where the plane landed and where she lived and worked. Lozoya thus argues that venue was constitutionally improper because her trial did not take place in the state and district where her crime took place.

We disagree. Neither Article III nor the Sixth Amendment says that a state or district includes airspace, and there is, of course, no indication that the Framers intended as such.**[3]** Indeed, the very purpose of the Constitution's venue provisions—to protect the criminal defendant from "the unfairness and hardship to which trial in an environment alien to the accused exposes him"—is thwarted by limiting venue to a flyover district in which the defendant never set foot. *United States v. Johnson*, 323 U.S. 273, 275 (1944).

For crimes committed on planes in flight, the Constitution does not limit venue to the district directly below the airspace where the crime was committed. And thus venue "shall be at such Place or Places as the Congress may by Law have directed."**[4]** U.S. Const. art. III, § 2, cl. 3.

---

**[3]** Our decision in *United States v. Barnard*, 490 F.2d 907 (9th Cir. 1973), does not help Lozoya's argument. In *Barnard*, we interpreted 18 U.S.C. § 3237(a), which provides that offenses involving transportation in foreign commerce may be prosecuted in "any district from, through, or into which such commerce . . . moves." *Barnard* concluded that under the statute, a drug-smuggling plane moved "through" a district when the plane flew over it, because "the navigable airspace above that district is a part of the district." 490 F.2d at 911. *Barnard* did not purport to interpret Article III or the Sixth Amendment in reaching that holding.

**[4]** We are puzzled by the dissent's baggage handler hypothetical, in which a rogue baggage handler, "standing on the tarmac at Los Angeles International Airport," aims a laser at an aircraft during takeoff. Dissent at 37. The dissent concedes that "the baggage handler's offense was committed in California, and because the Venue Clause's exception for offenses 'not committed within any state' is *inapplicable*, it must be tried in California." Dissent at 37 (emphasis added). We agree: the hypothetical crime was committed in California; thus the Constitution requires that it be tried in California. The inquiry ends there. Despite

## II. Statutory Requirements

18 U.S.C. § 3237(a) contains two paragraphs, each covering a different type of offense.  First, "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."  *Id.*  Second, "[a]ny offense involving . . . transportation in interstate or foreign commerce . . . is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce . . . moves."  *Id.*

Two of our sister circuits, the Tenth and the Eleventh, have held that the second paragraph of § 3237(a) applies to in-flight crimes because the crimes "took place on a form of transportation in interstate commerce."  *United States v. Breitweiser*, 357 F.3d 1249, 1253 (11th Cir. 2004) ("Congress has provided a means for finding venue for crimes that involve the use of transportation.  The violations of the statutes here [abusive sexual contact and simple assault of a minor] are 'continuing offenses' under 18 U.S.C. § 3237."); *see also United States v. Cope*, 676 F.3d 1219, 1225 (10th Cir. 2012).  In both these cases, the court upheld venue in the district where the airplane landed, rather than requiring the government to show "exactly which federal district was beneath the plane when [the defendant]

---

recognizing that Congress's venue statutes do not apply when the Constitution settles the issue, the dissent goes on to apply an inapplicable statute and argues that it does not lead to the correct result.  There is of course no requirement to "reconcile" a hypothetical result under an inapplicable statute.  *See* Dissent at 38.

committed the crimes." *Breitweiser*, 357 F.3d at 1253; *see also Cope*, 676 F.3d at 1225.

We join the Tenth and Eleventh Circuits and conclude that the second paragraph of 18 U.S.C. § 3237(a) applies to federal crimes committed on commercial aircraft within the special aircraft jurisdiction of the United States. Lozoya's crime "involved" transportation in interstate commerce under a plain meaning reading of the word "involve." *See American Heritage Dictionary* (5th ed. 2019) (defining "involve" as "[t]o relate to or affect"). Not only did the crime take place on a form of interstate transportation, the assault is a federal offense only because it was committed within the special aircraft jurisdiction of the United States. *See* 49 U.S.C. § 46506. But for the interstate transportation, Lozoya could not have committed this crime. An offense whose very definition requires interstate transportation certainly "involves" transportation in interstate commerce.

That the dissent disagrees with Congress's broad definition of "continuing offense" is of no import. The dissent believes that a continuing offense should be defined as "one which was committed in more than one state" or locality. Dissent at 35–36. But that is simply not the definition that Congress adopted in the second paragraph of § 3237(a), which provides that "[a]ny offense involving . . . transportation in interstate or foreign commerce . . . is a continuing offense."[5] Rather, the dissent's definition is almost identical to the first paragraph of § 3237(a), covering

---

[5] The dissent insists that our interpretation is "strained" and characterizes it as the following: "[T]he majority has interpreted the phrase 'continuing offense' in § 3237 to include any offense . . . involving transportation in interstate or foreign commerce." Dissent at 36, 40. We note that is literally what the statute says.

offenses "begun in one district and completed in another, or committed in more than one district."  18 U.S.C. § 3237(a); *see also United States v. Rodriguez-Moreno*, 526 U.S. 275, 282 (1999).  Here, we are not concerned with the first paragraph but with the second.  Under the second paragraph of § 3237(a), venue was proper in the Central District of California, through and into which the plane moved.[6]

Our holding is consistent not only with the Tenth and Eleventh Circuits' decisions, but also with the near-universal practice of landing district prosecution.  For decades, and since Congress federalized certain offenses committed in the air, federal offenders have been prosecuted and tried in the landing districts.  Venue in the landing district is plainly sensible: it is where arrests are made and witnesses interviewed, and is often the defendant's residence or travel

---

[6] Where the Constitution does not mandate venue in a particular district, Congress has broad latitude to define the locality of a crime. *See, e.g.*, 48 U.S.C. § 644a (providing that "all offenses and crimes committed" on certain Pacific islands, including the Midway Islands, Wake Island, Johnston Island, and Palmyra Island, "shall be deemed to have been consummated or committed on the high seas on board a merchant vessel or other vessel belonging to the United States").  The dissent relies on *United States v. Johnson*, 323 U.S. 273 (1944), to narrow Congress's language in the second paragraph of § 3237(a). *See* Dissent at 33–34.  *Johnson* did not interpret the second paragraph of § 3237(a) because it did not exist when *Johnson* was decided.  That Congress wrote the second paragraph in response to *Johnson* does not mean that the second paragraph must be limited by *Johnson*'s specific context and discussion.  And the *Johnson* Court did not require that Congress adopt any particular definition. *See Johnson*, 323 U.S. at 275.  Further, the dissent's analysis of *Johnson* contradicts the dissent's own argument that the second paragraph of § 3237(a) "defines a particular category of offenses" that "fall within the more generally framed rule set forth in the first paragraph."  Dissent at 34.  If that were true, then Congress would not have needed to add the second paragraph after *Johnson* because both paragraphs would yield the same result.

destination. In our research, we found examples of landing district venue in *every* circuit except the D.C. Circuit (the District of Columbia has no commercial airports), and discovered no court that has prohibited venue in the landing district.**[7]**

By contrast, flyover prosecution is virtually unheard of, for good reason.**[8]** To establish venue under Lozoya's theory, the government must determine exactly when the crime was committed, use flight tracking sources to pinpoint the plane's longitude and latitude at that moment, and then look down five miles to see which district lay below. Lozoya dismisses the government's concerns about the difficulty of the task as "hyperbolic," suggesting that the time of the

---

**[7]** *See, e.g.*, *United States v. Jahagirdar*, 466 F.3d 149 (1st Cir. 2006) (sexual assault); *United States v. Cohen*, No. 07-cr-5561, 2008 WL 5120669 (2d Cir. Dec. 8, 2008) (sexual assault); *United States v. Aksal*, 638 F. App'x 136 (3d Cir. 2015) (sexual assault); *United States v. Jennings*, 496 F.3d 344 (4th Cir. 2007) (sexual abuse of a minor); *United States v. Stewart*, No. 02-CR-046, 2002 U.S. Dist. LEXIS 20220 (N.D. Tex. Oct. 21, 2002) [5th Cir.] (sexual assault); *United States v. Anderson*, 503 F.2d 420 (6th Cir. 1974) (attempted manslaughter); *United States v. Barberg*, 311 F.3d 862 (7th Cir. 2002) (sexual assault); *United States v. Kokobu*, 726 F. App'x 510 (8th Cir. 2018) (per curiam) (simple assault); *United States v. Lozoya*, No. 16-00598 (C.D. Cal. Sept. 8, 2017), *rev'd*, 920 F.3d 1231 (9th Cir. 2019); *United States v. Johnson*, 458 F. App'x 727 (10th Cir. 2012) (interference with flight crewmember and sexual assault); *United States v. Breitweiser*, 357 F.3d 1249 (11th Cir. 2004) (sexual abuse of a minor and simple assault).

**[8]** We acknowledge that § 3237(a) theoretically allows venue not just in the landing district, but also the takeoff district as well as the flyover districts. But we are not aware of any cases where the government prosecuted an in-flight crime in a flyover district with which the defendant had no ties. And in the event that a choice of venue implicates concerns about fairness or inconvenience, the defendant can request a transfer of venue. *See* Fed. R. Crim. P. 21(b).

crime can be determined using witness testimony and some math. The witnesses, however, gave different estimates of when the slap occurred. Lozoya's flight from Minneapolis to Los Angeles crossed at least eight districts in about three-and-a-half hours. In the span of an hour—the difference between the estimates of two witnesses—an airplane can easily fly over multiple states and districts.

A flyover venue rule would unreasonably burden the victims of in-flight crimes and the interests of justice. Of particular concern are victims of sexual assault. According to the FBI, reports of sexual assault on commercial flights are at an all-time high.[9] Sexual assaults are most common on long-haul flights when the victim is sleeping and covered by a blanket or jacket. Sometimes there are no witnesses. Victims report waking up disoriented and realizing in horror that they were assaulted by a seatmate. Proving the precise time of an assault could be impossible, and a flyover venue rule could mean no prosecution at all.

The venue statute cited by the dissent, 18 U.S.C. § 3238, is inapplicable here. Section 3238 applies to "offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district," *id.*, and we have held that it applies only if "the offense was committed entirely on the high seas or outside the United States (unless, of course, the offense was 'begun' there)." *United States v. Pace*, 314 F.3d 344, 351 (9th Cir. 2002). Lozoya's offense was not committed on the high seas, and

---

[9] *Sexual Assault Aboard Aircraft*, Federal Bureau of Investigation (Apr. 26, 2018), https://www.fbi.gov/news/stories/raising-awareness-about-sexual-assault-aboard-aircraft-042618.

for obvious reasons, we decline to hold that airspace above the United States is "outside the United States."

Although the dissent disagrees with *Pace*'s conclusion that § 3238 applies to crimes outside the United States, our interpretation in *Pace* is consistent with that of our sister circuits and the legislative history of § 3238.**[10]**   As the dissent notes, Congress most recently amended § 3238 in 1963, to address (1) crimes committed by more than one offender, and (2) crimes committed by an offender who remains abroad.   Dissent at 27.   The Senate Report accompanying the 1963 amendments expressly stated that § 3238 was intended to cover extraterritorial crimes: "The purpose of the bill is to (1) permit the indictment and trial of an offender or joint offenders who commit *abroad* offenses against the United States, in the district where any of the offenders is arrested or first brought; (2) to prevent the statute of limitations from tolling in cases where an offender or any of the joint offenders remain *beyond the bounds of the United States* by permitting the filing of information or indictment in the last known residence of any of the

---

**[10]** *See United States v. Miller*, 808 F.3d 607 (2d Cir. 2015) (concluding that "the history and text of § 3238 do make clear, at the very least, that the statute focuses on offense conduct outside of the United States," *id.* at 619, and "[s]ection 3238 may apply even when certain offense conduct occurs in the United States, if the criminal acts are nonetheless 'essentially foreign,'" *id.* at 621); *United States v. Holmes*, 670 F.3d 586, 594 (4th Cir. 2012) ("We begin, as we must, with the text of § 3238, which establishes that venue for extraterritorial offenses 'shall be in the district in which the offender . . . is arrested or is first brought.'"); *United States v. Layton*, 519 F. Supp. 942, 944 (N.D. Cal. 1981) ("The apparent purpose of [§ 3238], however, is simply to provide an arbitrary rule of venue for offenses committed outside of the United States.").

offenders."[11]  S. Rep. No. 88-146 (1963), *reprinted in* 1963 U.S.C.C.A.N. 660, 660 (emphases added).

Moreover, § 3238 by its terms applies to crimes committed "out of the jurisdiction of any particular State or district," but the states routinely assert jurisdiction over crimes committed in airspace. *See, e.g.*, N.J. Stat. Ann. § 6:2-9 ("All crimes, torts, and other wrongs committed by or against an airman or passenger while in flight over this state shall be governed by the laws of this state."); Fla. Stat. § 860.13 (criminalizing the "[o]peration of aircraft while intoxicated or in careless or reckless manner"); *Marsh v. State*, 620 P.2d 878, 879 (N.M. 1980) ("Although the Federal Aviation Act of 1958 was amended to extend federal criminal laws to certain acts committed on board aircraft, this legislation was not intended to preclude state prosecution for the same crimes." (citation omitted)).

There is no indication that Congress, when it amended § 3238 in 1963, believed that airspace above a state is "out of the jurisdiction" of that state.  Indeed, when Congress amended the Federal Aviation Act in 1961 to federalize certain in-flight criminal acts, it recognized that crimes

---

[11] The dissent admits that the two amendments exclusively address extraterritorial crimes, but insists that the new language added in 1963, irrelevant here, provides the extraterritoriality requirement.  Dissent at 31.  This is wrong.  For example, one of the two amendments added the following italicized language: "The trial of all offenses begun or committed . . . out of the jurisdiction of any particular State or district, shall be in the district in which the offender, *or any one of two or more joint offenders*, is arrested or is first brought[.]"  18 U.S.C. § 3238 (emphasis added).  The added language clearly refers to the number of offenders and not to the extraterritorial location of the crime.  Thus, *Pace* and our sister circuits correctly interpreted "out of the jurisdiction of any particular State or district"—the relevant language here—as referring to places outside of the United States.

committed in airspace are *within* the jurisdiction of the states:

> The offenses punishable under this legislation would not replace any State jurisdiction but would, where both Federal and State law provided for punishment for the same act, be in addition to the State criminal law.
>
> *    *    *
>
> We wish to emphasize that it is not our intent to divest the States of any jurisdiction they now have.  This legislation merely seeks to give the Federal Government concurrent jurisdiction with the States in certain areas where it is felt that concurrent jurisdiction will contribute to the administration of justice and protect air commerce.

H.R. Rep. 87-958 (1961), *reprinted in* 1961 U.S.C.C.A.N. 2563, 2564–65.[12]  We think it unwise to divest states of their

---

[12] At that time, the Federal Aviation Act included a special venue provision containing language almost identical to § 3238: "[I]f the offense is committed out of the jurisdiction of any particular State or district, the trial shall be in the district where the offender, or any one of two or more joint offenders, is arrested or is first brought."  49 U.S.C. § 1473(a) (repealed 1994).  Legislative history shows that Congress understood "committed out of the jurisdiction of any particular State or district" to mean "where . . . offenders commit an offense abroad"—just as it understood § 3238.  H.R. Rep. 87-958 (1961), *reprinted in* 1961 U.S.C.C.A.N. 2563, 2577.  In the context of aviation, "abroad" naturally refers to foreign airspace and not United States airspace.

jurisdiction, and dangerous to do so by holding that the airspace above them is not within the United States.

The dissent insists that its interpretation does not divest states of their jurisdiction, despite that it requires concluding that airspace is "out of the jurisdiction of any particular State" in order for § 3238 to apply. According to the dissent, such a paradoxical reading is required because the "text and statutory history of § 3238 show that its scope is coextensive with the Venue Clause." Dissent at 29–30. The text is certainly not coextensive. The text of the Venue Clause is "not committed within any State," and the text of § 3238 is "elsewhere out of the *jurisdiction* of any particular State or district"—the key word is "jurisdiction." The dissent ignores the statute's clear text and argues that the word "jurisdiction" actually means "territory," relying on a 170-year-old Supreme Court decision interpreting a predecessor statute. Dissent at 26, 29–30. Untethering the word from its meaning turns the statute upside down, leading to the dissent's perplexing conclusion that a state can retain jurisdiction to prosecute crimes that are committed "out of the jurisdiction of any particular State."[13]

The dissent contends that legislative history, our decision in *Pace*, and our sister circuits' decisions are all wrong, unreasoned, or dicta. *See* Dissent at 29 n.9. In the dissent's view, we need not consult any of these sources

---

[13] According to the dissent, § 3238's "offenses begun or committed . . . elsewhere out of the *jurisdiction* of any particular State" has nothing to do with "whether the State has the authority to prosecute the offense." Dissent at 30 (emphasis added). The dissent claims that "the text" compels this interpretation. Dissent at 30. This interpretation, in turn, is the basis of the dissent's equally perplexing argument that *we* rewrote the statutory text by reading "jurisdiction" to mean "jurisdiction." Dissent at 25.

because the statutory text clearly supports the dissent's interpretation.  *See* Dissent at 25.  That is, the dissent believes that § 3238's "out of the jurisdiction of any particular State or district" clearly refers to a place (i) *within* the United States (ii) but "*not within* a state," (iii) yet also *within* the jurisdiction of the states.[14]  Dissent at 26 (emphasis added), 29, 30 n.10.  We cannot find such a peculiar place in the statute's clear text, and we are unaware of any court that has.[15]

We hold that under 18 U.S.C. § 3237(a), venue for in-flight federal crimes is proper in the landing district.  We adopt here a venue rule that is tethered to the Constitution, comports with the decisions of our sister circuits, and is consistent with common sense and the interests of justice.

## CONCLUSION

The Constitution does not limit venue for in-flight federal crimes to the district sitting directly below a plane at the moment a crime was committed.  Such in-flight crimes are covered by 18 U.S.C. § 3237(a) and may be prosecuted in the flight's landing district.  We therefore conclude that

---

[14] The dissent's interpretation requires concluding that all of these things are simultaneously true about airspace (and that all contrary legal authority is wrong).  Otherwise, the dissent would have to conclude that United States airspace is extraterritorial or that states can no longer assert jurisdiction over airspace.

[15] Nor does the government's petition for rehearing en banc—which relies exclusively on § 3237(a)—argue for the dissent's interpretation of § 3238.

venue was proper in the Central District of California and affirm the district court.

**AFFIRMED.**

---

IKUTA, Circuit Judge, with whom COLLINS and LEE, Circuit Judges, join, dissenting in part and concurring in the judgment:

This case requires us to determine where a criminal case must be adjudicated when a discrete federal offense occurs on an aircraft flying through the airspace above a particular state. Under 49 U.S.C. § 46506, Congress has made simple assault a federal crime if the assault occurs "on an aircraft in the special aircraft jurisdiction of the United States." 49 U.S.C. § 46506; 18 U.S.C. § 113(a)(5). The majority holds that venue for this crime is proper in any district the airplane traveled from, through, or into, meaning that the trial for an assault on a cross-country flight can be held in any flyover state. *See* Maj. at 12 n.8 (acknowledging that 18 U.S.C. § 3237(a) "theoretically allows venue not just in the landing district, but also the takeoff district as well as the flyover districts"). Congress did not direct such an absurd result; rather, under the correct venue statute, the trial for an assault on a cross-country flight can be held only where the defendant "is arrested or is first brought," or where the defendant resides. 18 U.S.C. § 3238. Therefore, I dissent from the majority's reasoning.

I

Article III's Venue Clause provides that: "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed," U.S. Const. art. III, § 2,

cl. 3, and the Sixth Amendment further specifies that crimes committed within a state must be tried in the "district wherein the crime shall have been committed, which district shall have been previously ascertained by law," U.S. Const. amend. VI.  There is only one exception to this general rule: when the crimes are "not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. art. III, § 2, cl. 3.[1] Monique Lozoya assaulted a fellow passenger while on an aircraft in flight, and it is undisputed that Lozoya did not commit this offense in California.  Therefore, the Venue Clause does not allow Lozoya's trial to be held in California, unless: (1) Lozoya's offense was "not committed within any state," and (2) Congress directed that the trial could be held in California.

## II.

To determine whether the exception to the Venue Clause's general rule applies, we first ask whether Lozoya's offense was "not committed within any State."  For the reasons explained below, when criminal conduct occurs in navigable airspace, the crime is "not committed within any State," U.S. Const. art. III, § 2, cl. 3, and Congress may

---

[1] The Venue Clause provides, in full:

> The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.

U.S. Const. art. III, § 2, cl. 3.

designate the venue for such a crime, Maj. at 8, at least when the crime has no effect on the ground below.[2]

The Venue Clause is ambiguous when applied to an offense that took place in an airplane flying over the United States, and some of our usual tools for interpreting legal texts are not helpful here. We can be confident that, when the Constitution was adopted in 1789, the public had no view regarding whether a crime committed at cruising altitude in navigable airspace was committed within a state under the Venue Clause. While some contemporaneous sources indicate that "the jurisdiction of a state is co-extensive with its territory," *United States v. Bevans*, 16 U.S. 336, 386–87 (1818), and therefore a crime committed within the jurisdiction of a state might be deemed to be committed within that state's territory for purposes of the Venue Clause, these sources do not indicate whether a state's jurisdiction extended to offenses occurring exclusively at 30,000 feet. To be sure, "at common law ownership of the land extended to the periphery of the universe," *Causby*, 328 U.S. at 260, but this principle must be understood against the backdrop of the sorts of above-the-ground activities contemplated at

---

[2] For present purposes, we need not resolve the question whether crimes on airplanes that have an on-the-ground effect within a state's territory are committed within the state, such as when a plane is used for unlawfully spraying agricultural pesticides over land, *see* Charles F. Krause, *Aviation Tort and Reg. Law* § 14:49 (2d ed. 2020), when flyover activities affect residents, *see United States v. Causby*, 328 U.S. 256, 258 (1946), or when an offense occurs partly on the ground and partly on an aircraft, *see, e.g.*, 49 U.S.C. § 46505 (criminalizing carrying concealed weapons or explosives aboard aircraft, which may also violate state laws). An offense such as the one at issue here, committed wholly within a plane flying miles above any state, has no impact on the territory of the state below, and therefore does not raise this question.

the time.[3]  Given that technology has changed dramatically since the founding—in addition to aircraft, both satellites and spaceships now regularly invade the airspace between the land below and "the periphery of the universe," *id.*—this common law principle is not entitled to much weight in this context.  Indeed, the Supreme Court has indicated that this common law principle may not be relevant to the modern use of navigable airspace.  *See id.* at 261.

We are left to rely on what the Framers' contemporaries would have understood to be the purpose of the Venue Clause.  *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 806–08 (1995).  Historical sources indicate that the central purpose of the Venue Clause's requirement that trials be held in "the state where the said crimes shall have been committed" was to prevent criminal suspects from being tried in arbitrary locations, far away from witnesses.  *See* Joseph Story, *Commentaries on the Constitution* § 1775 (1833).  This was an important issue for the Framers.  The Declaration of Independence had criticized the Crown "[f]or transporting us beyond Seas to be tried for pretended offences."  The Declaration of Independence para. 21 (U.S. 1776).  In Federalist No. 84, Alexander Hamilton argued that the Constitution contained "various provisions in favor of particular privileges and rights," including the Venue

---

[3] The first human flight occurred on November 21, 1783, in Paris, France, in a hot air balloon made of paper and silk.  *History of Ballooning*, National Balloon Museum, https://www.nationalballoonmu seum.com/about/history-of-ballooning/ (last visited Sept. 23, 2020). The balloon reached an altitude of 500 feet and traveled 5.5 miles before landing 25 minutes later.  *Id.*  The first manned flight in America occurred on January 9, 1793.  *Id.*  A balloon carrying one man ascended from a prison yard in Philadelphia, Pennsylvania, reaching an altitude of 5,800 feet.  *Id.*  President Washington observed the launch of the balloon, which later landed in Gloucester County, New Jersey.  *Id.*

Clause's general rule that a trial be held in the state where the crime was committed. The Federalist No. 84 (Alexander Hamilton). As the Supreme Court subsequently explained, the Framers drafted the Venue Clause with an awareness "of the unfairness and hardship to which trial in an environment alien to the accused exposes him." *United States v. Johnson*, 323 U.S. 273, 275 (1944).

Given the inadequacy of our usual interpretive tools, we should interpret the Venue Clause in a manner consistent with its evident purpose. A ruling that crimes that are committed entirely in navigable airspace (and that have no effect on the ground below) are "not committed within any State" is consistent with that purpose, because it allows Congress to identify a reasonable place to hold trials for such crimes. *See* Story, *Commentaries*, § 1775. Otherwise, prosecutors would be required to establish where a criminal act occurred in airspace over a state, and defendants would have to be tried in flyover states. Accordingly, under the Venue Clause, a crime is "not committed within any State" when the criminal conduct occurs in navigable airspace.**[4]**

---

**[4]** The conclusion that a crime is not committed within any state if it is committed in navigable airspace requires us to overrule *United States v. Barnard*, which held that "navigable airspace above [a] district is a part of the district." 490 F.2d 907, 911 (9th Cir. 1973). Under federal law, if a crime is committed in a judicial district, it is also committed in a state. *See* 28 U.S.C. §§ 81–131 (defining judicial districts as comprising all or part of a state, with few exceptions). If the navigable airspace above a district is part of that district and part of a state, then the trial of an offense in such airspace must take place within that district and state. *See* U.S. Const. art. III, § 2, cl. 3; U.S. Const., amend VI. The majority attempts to distinguish *Barnard* on the ground that it "did not purport to interpret Article III or the Sixth Amendment." Maj. at 8 n.3. This is irrelevant, however, because we are bound by the constitutional significance of *Barnard*'s ruling whether or not *Barnard* referenced the

The majority agrees that in-flight crimes are "not committed within any State" within the meaning of the Venue Clause and are not committed within a "district" for purposes of the Sixth Amendment. According to the majority, neither the relevant text of either provision nor the Framers' understanding of them supports Lozoya's view that "a state or district includes the airspace above it for constitutional venue purposes." Maj. at 7. The majority thus concludes that, when crimes are "committed on planes in flight, the Constitution does not limit venue to the district directly below the airspace where the crime was committed." *Id*. at 8. Accordingly, the majority explains, "venue 'shall be at such Place or Places as the Congress may by Law have directed.'" *Id.* (quoting U.S. Const. art. III, § 2, cl. 3).

## III

Because Lozoya's offense was "not committed within any State," the trial "shall be at such Place or Places as the Congress may by law have directed." U.S. Const. art. III, § 2, cl. 3. Congress provided this direction in 18 U.S.C. § 3238,[5] which mirrors and implements the exception in the

---

Venue Clause or Sixth Amendment. If *Barnard* remains good law, then we must deem the assault here to have "occurred *entirely* within the jurisdiction of a particular district" and a particular state, and Lozoya must be tried in that district and state. *See United States v. Lozoya*, 920 F.3d 1231, 1241 (9th Cir. 2019) (emphasis added), *reh'g en banc granted*, 944 F.3d 1229 (9th Cir. 2019).

[5] As currently drafted, 18 U.S.C. § 3238 provides:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such

Venue Clause. The majority's argument to the contrary is based almost entirely on legislative history, which it uses to rewrite the text of § 3238. But as explained below, the language of § 3238 refutes the majority's claims, and the majority's selective quotations from committee reports do nothing to alter that. *See United States v. Mendoza*, 244 F.3d 1037, 1042 (9th Cir. 2001) ("If the text of the statute is clear, this court looks no further in determining the statute's meaning."). Indeed, the text and statutory history of both § 3238 and § 3237 strongly confirm that the majority relies upon the wrong venue provision in upholding the conviction here.

A

Section 3238 is the direct descendant of the statute enacted by the First Congress to implement the Venue Clause. In the Crimes Act of 1790, Congress provided:

> [T]he trial of crimes committed on the high seas, or in any place out of the jurisdiction of any particular state, shall be in the district where the offender is apprehended, or into which he may first be brought.

Ch. 9, § 8, 1 Stat. 112, 114 (1790).

As the Supreme Court explained over a century ago, Congress enacted this venue provision in the Crimes Act to

offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

implement the Venue Clause's exception for crimes "not committed within any State." *United States v. Dawson*, 56 U.S. 467, 487–88 (1853). The First Congress used the phrase "crimes committed . . . in any place out of the jurisdiction of any particular state" to refer to crimes "not committed within any State." *Id.* at 488. This makes clear that the "place" referred to in the Crimes Act is a place outside of any state's territory, which is where the state would normally have jurisdiction to adjudicate offenses.

In 1873, Congress passed An Act to Revise and Consolidate the Statutes of the United States, 18 Stat. 138, which moved and renumbered the Crimes Act's venue provision and made minor revisions to its language as follows:

> The trial of all offenses committed upon the high seas or elsewhere, out of the jurisdiction of any particular State or district, shall be in the district where the offender is found, or into which he is first brought.[6]

Congress revised the phrase "or in any *place* out of the jurisdiction of any particular state" to "or *elsewhere*, out of the jurisdiction of any particular State or district." 1 Stat. 112, 114; 18 Stat. 138 (emphasis added). The context makes clear, however, that the word "elsewhere" continues to refer to a "place" that is not within a state. *See Cook v. United States*, 138 U.S. 157, 181–82 (1891) (continuing to interpret this provision as directing venue for "offenses not committed within any state" under the Venue Clause). Congress made limited stylistic amendments to this provision again in 1911.

---

[6] With the 1873 amendments, Congress renumbered the provision to Title XIII, Ch. 12, § 730 of the U.S. Code. 18 Stat. 138.

36 Stat. 1100.  In 1948, Congress recodified the provision as 18 U.S.C. § 3238 and amended the statute to apply to offenses "begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district." 62 Stat. 826.  Again, this language refers to places that are not within a state.

In 1963, Congress amended § 3238 to clarify where venue would be proper when an offense involved two or more joint offenders, or when the offender or offenders were not arrested or brought into any district.   77 Stat. 48. Congress retained the prior language of the statute, but added the following italicized language:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, *or any one of two or more joint offenders*, is arrested or is first brought; *but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.*

18 U.S.C. § 3238 (emphasis added).   According to a contemporaneous legislative report, Congress amended the statute in response to two concerns expressed by the Attorney General.  First, the previous version of § 3238 created a "most awkward situation in certain instances when two or more joint offenders [were] involved." H.R. Rep. No.

86-199, at 2 (1959) (Judiciary Committee Report); *see also*
S. Rep. No. 88-146 (1963), *as reprinted in* 1963
U.S.C.C.A.N. 660.  For example, if two or more individuals
jointly committed acts of treason abroad and were then
found in different districts within the United States, the
previous version of § 3238 would require them to be tried in
different jurisdictions.  H.R. Rep. No. 86-199, at 2.  Second,
the prior version of § 3238 lacked language that would allow
the government to indict "an offender who commits an
offense beyond the bounds of the United States and [who]
remains beyond those bounds."[7]  *Id*.  The amendment to
§ 3238 addressed both concerns.  *Id.* at 1.[8]  While the 1963
amendment gave the government more flexibility to try
cases involving defendants who committed offenses against

---

[7] When defendants committed crimes against the United States
abroad, the statute of limitations for commencing criminal prosecution
against such defendants continued running while they remained living
abroad.  *See* H.R. Rep. No. 86-199, at 3; *see also Donnell v. United
States*, 229 F.2d 560, 565 (5th Cir. 1956).  The Attorney General wanted
the authority to indict such defendants in the United States in order to
toll the statute of limitations.

[8] According to the House Judiciary Committee Report, the purpose
of this amendment to § 3238 was to:

> (1) permit the indictment and trial of an offender or
> joint offenders who commit abroad offenses against
> the United States, in the district where any of the
> offenders is arrested or first brought; (2) to prevent the
> statute of limitations from tolling in cases where an
> offender or any of the joint offenders remain beyond
> the bounds of the United States by permitting the filing
> of information or indictment in the last known
> residence of any of the offenders.

H.R. Rep. No. 86-199, at 1; *see also* S. Rep. No. 88-146, at 1, 1963
U.S.C.C.A.N. at 660.

the United States abroad, it did not change the original text of § 3238, which continued to apply to offenses committed "elsewhere out of the jurisdiction of any particular State," just as it had since the Crimes Act.

Given the text and history of § 3238, the majority's claim that § 3238 applies only to offenses "committed entirely on the high seas or outside the United States" lacks merit. Maj. at 13 (quoting *United States v. Pace*, 314 F.3d 344, 351 (9th Cir. 2002)). The majority's interpretation has no support in the text of § 3238. Although Congress could have limited § 3238 to offenses committed "outside the United States," it instead chose to reference offenses "committed upon the high seas, *or elsewhere* out of the jurisdiction of any particular State or district." 18 U.S.C. § 3238 (emphasis added).[9] The majority is likewise mistaken in claiming that the reference in § 3238 to offenses that are committed "elsewhere out of the jurisdiction of any particular State" applies only to offenses that a state lacks the authority to prosecute. Maj. at 17. The text and statutory history of § 3238 show that its scope is coextensive with the Venue

---

[9] The majority's reliance on dicta in nonbinding cases provides no support for concluding otherwise. The unreasoned statement in *Pace* that "§ 3238 does not apply unless the offense was committed entirely on the high seas or outside the United States (unless, of course, the offense was 'begun' there)" is mere dicta given that the offense in *Pace* was "partially 'committed' in the District of Ohio." 314 F.3d at 351. The two other cases cited by the majority are likewise unreasoned and unpersuasive. *See United States v. Miller*, 808 F.3d 607, 621 (2d Cir. 2015) (stating, without support, that § 3238 "*focuses* on offense conduct outside of the United States" (emphasis added)); *United States v. Layton*, 519 F. Supp. 942, 943–44 (N.D. Cal. 1981) (stating without support or reasoning that "[t]he *apparent* purpose of [§ 3238], however, is simply to provide an arbitrary rule of venue for offenses committed outside of the United States" (emphasis added)).

Clause exception, and applies to crimes committed outside
the territory of a state.

The majority contends that this construction of § 3238 is
wrong. According to the majority, if § 3238 applies to in-
flight offenses, then such offenses would be deemed to have
been committed "elsewhere out of the jurisdiction of any
particular State," and that interpretation would divest states
of their prosecutorial jurisdiction over in-flight crimes. Maj.
at 15–16. The text of the statute refutes the majority's
reading. By using the word "elsewhere," § 3238 focuses on
whether the place where the offense was committed is "out
of the jurisdiction of any particular State" and not (as the
majority would have it) on whether the State has the
authority to prosecute the offense. This means there is no
daylight between § 3238 and the Venue Clause because both
focus on whether the place in which the offense occurred is
within a state. And because the majority agrees that the
airspace at issue here is not a place within any State for
purposes of the Venue Clause, *see supra* at Part II, it follows
that the airspace is also not a place within the jurisdiction of
any State for purposes of § 3238. Thus, nothing about
§ 3238 could be said to "divest states of their jurisdiction."
Maj. at 16–17. The question whether a state can prosecute a
crime committed outside a state's territory in navigable
airspace is exactly the same under § 3237(a) or § 3238.[10]

---

[10] The majority merely assumes that a state has jurisdiction to
prosecute crimes committed at cruising altitude in navigable airspace,
and supports its assumption only with the legislative history of the 1961
amendments to the Federal Aviation Act. Maj. at 15–16 & n.12. The
views of legislators regarding a state's jurisdiction provide no guidance
for our analysis of such a legal question, and of course the legislative
history of a "completely separate statute[] passed well after" the statute

Nor does legislative history support the majority's interpretation.  The majority relies on legislative history explaining the 1963 amendment to § 3238, Maj. at 14–17, which added language covering offenders committing criminal acts abroad.  This amendment did not affect the language in § 3238 relevant here, which directs that offenses committed "elsewhere out of the jurisdiction of any particular State or district" must be tried in the district in which the offender is arrested or first brought.  Therefore, the 1963 legislative history sheds no light on whether the relevant language in § 3238 is limited to offenses committed abroad.

In short, § 3238 implements the Venue Clause: it provides where a crime shall be tried if it is "not committed within any State."  Because an assault in navigable airspace is "not committed within any State," the trial must be held where § 3238 directs, namely, "in the district" where the offender is "arrested or . . . first brought," or if there is no such district, in the district where the offender resides. 18 U.S.C. § 3238.  This is consistent with the purposes behind the Venue Clause because the trial of an offender who committed an assault on an airplane will generally be held where the offender is arrested, typically in the district where the plane lands.[11]  Such a venue is not arbitrary, because the defendant, the witnesses, and the victims are more likely to be found in that district than any other.

---

being construed, has little persuasive power even to those who rely on legislative history.  *Doe v. Chao*, 540 U.S. 614, 626 (2004).

[11] This is consistent with the "near-universal practice of landing district prosecution."  Maj. at 11.

Because Lozoya committed an assault in navigable airspace, § 3238 applies, and she is subject to trial in the Central District of California.[12]

## B

To recap, the majority agrees that a crime committed on a plane in flight is "not committed within any State" for purposes of the Venue Clause.  Maj. at 8.  And as the Venue Clause's exception provides, if a crime is not committed within a state, it may be tried wherever Congress directs.[13] But instead of relying on § 3238, which expressly directs where an offense committed outside of a state must be tried, the majority relies on the second sentence in § 3237(a), which addresses a different issue: ensuring that continuing offenses can be tried "in any district from, through, or into which . . . commerce . . . moves."[14]

---

[12] The record indicates that Lozoya's residence was in Riverside, California. Therefore, even if Lozoya was not arrested when she was summoned to appear before the magistrate judge, venue was proper in the district of her last known residence, the Central District of California. *See* 18 U.S.C. § 3238.

[13] For instance, the majority points to 48 U.S.C. § 644a, which provides that all offenses committed on certain Pacific islands "shall be deemed to have been consummated or committed on the high seas on board a merchant vessel or other vessel belonging to the United States." Maj. at 11 n.6.  Because these islands are not "within any State," Congress may direct where crimes on such islands may be tried.

[14] 18 U.S.C. § 3237(a) provides, in full:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired

The text and statutory history make clear that § 3237(a) does not implement the Venue Clause, but rather provides for the trial of offenses committed in more than one state or district. The second sentence in § 3237(a) was enacted in response to the Supreme Court's decision in *United States v. Johnson*, 323 U.S. at 273–74.[15]  *Johnson* construed a criminal statute making it unlawful to "use the mails or any instrumentality of interstate commerce" to send or receive certain dentures across state lines. 323 U.S. at 273–74. Given a defendant's constitutional right to be tried in the state and district where the crime was committed, U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI, the Supreme Court construed the denture statute narrowly as permitting trial only in the state and district where the sender put the dentures in the mail or into which the importer brought the

> of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

[15] Prior to *Johnson*, the statute which is now § 3237(a) read:

> When any offense against the United States is begun in one judicial district and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined, and punished in either district, in the same manner as if it had been actually and wholly committed therein.

36 Stat. 1100 (1911).

dentures. *Id.* at 277–78. The Court indicated, however, that it would have reached a different result had Congress used "the doctrine of a continuing offense" and expressly provided that the crime extended over the whole area through which the dentures were transported. *Id.* at 275. Congress could, if it chose, enact "specific venue provisions giving jurisdiction to prosecute in any criminal court of the United States through which a process of wrongdoing moves." *Id.* at 276.

Rather than add a specific venue provision to the denture statute itself, as *Johnson* had suggested, Congress responded to *Johnson* by adding the second sentence of what is now § 3237(a), which expressly referred to a "continuing offense" and provided that such a continuing offense in the use of the mails or interstate commerce could be prosecuted "in any district from, through, or into which such commerce or mail matter moves." This amendment to § 3237(a) thus directly implemented *Johnson*'s guidance that Congress could use "the doctrine of a continuing offense" in order to "provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates," and therefore "an illegal use of the mails or of other instruments of commerce may subject the user to prosecution in the district where he sent the goods, or in the district of their arrival, or in any intervening district." *Id.* at 275.

The second paragraph of § 3237(a) is not surplusage, as the majority wrongly suggests. *See* Maj. at 10–11. Rather, the second paragraph defines a particular category of offenses that constitute continuing offenses and thereby fall within the more generally framed rule set forth in the first paragraph. Given the overlap between these two paragraphs, and the fact that the first paragraph of § 3237(a) standing

alone was insufficient to forestall the outcome in *Johnson*, the majority's suggestion that the two paragraphs must be read as applying to two different categories of offenses is clearly wrong. *Id.* It is not uncommon to have a situation "in which a general authorization and a more limited, specific authorization exist side-by-side." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). In that situation, there is no violation of the canon against superfluity, because the canon that "the specific governs the general" governs the analysis. *Id.* (citation omitted). Rather than being superfluous, the specific authorization (rather than the more general one) controls in the cases where it applies. *Id.* Further, the majority's notion that, in order to avoid surplusage, the second paragraph of § 3237(a) must be read in a way that raises grave constitutional concerns ignores the equally, if not more important, constitutional-avoidance canon. *See infra* at Part III.B. Even if there were redundancy in the proper reading of § 3237(a) set forth above, that reading is natural and preferable compared to the majority's oxymoronic and constitutionally problematic notion of a non-continuing continuing offense.

The doctrine of "continuing offenses" discussed in *Johnson* is not related to the Venue Clause's exception for offenses "not committed within any State," which is addressed in § 3238. Rather, the doctrine is a specific application of the constitutional requirements that crimes be tried in the state and district where they were committed. As interpreted by the Supreme Court, a "continuing offense" is an offense that "consists of distinct parts" that occur in "different localities," and "the whole may be tried where any part can be proved to have been done." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999) (quoting *United States v. Lombardo*, 241 U.S. 73, 77 (1916)). In other words, a "continuing offense" is one which was committed

in more than one state, and so can be tried in more than one state. For instance, crimes that persist during the course of transportation between states, such as interstate drug smuggling or kidnaping, are continuing offenses, which can be tried wherever the transportation occurred. *See Rodriguez-Moreno*, 526 U.S. at 279–81 (holding that kidnaping is a continuing offense because the "conduct constituting the offense" continues throughout the journey and "does not end until the victim is free").

Congress cannot avoid the strictures of the Sixth Amendment and Venue Clause merely by labeling a point-in-time offense as a "continuing offense." "Crimes consisting of a single noncontinuing act are 'committed' in the district where the act is performed." *Pace*, 314 F.3d at 350 (quoting *United States v. Corona*, 34 F.3d 876, 879 (9th Cir. 1994)). Any Congressional enactment that purported to allow the trial of such a point-in-time offense outside the state and district where it occurred, whether or not the offense was labeled "continuing," would be constitutionally impermissible. Therefore, the term "continuing offense" in § 3237(a) must be interpreted as referring to the sort of crime that "extend over the whole area through which force propelled by an offender operates," *Johnson*, 323 U.S. at 275, where the "process of wrongdoing" is "a continuing phenomenon," *id.* at 276–77.

Contrary to the Supreme Court's definition of the continuing offense doctrine, the majority has interpreted the phrase "continuing offense" in § 3237 to include any offense (including point-in-time offenses) involving transportation in interstate or foreign commerce. *See* Maj. at 10 (rejecting the argument that the "definition that Congress adopted" requires that the offense be continuing or persisting in any way). Therefore, under the majority's interpretation, any

offense (including a discrete slap) that "take[s] place on a form of interstate transportation" meets the criteria in the second sentence of § 3237(a): it is a continuing offense "involving" transportation in interstate commerce under § 3237(a), at least when the offense is one "whose very definition requires interstate transportation." Maj. at 10. Indeed, the majority acknowledges that no part of the offense at issue here occurred in the Central District of California. Maj. at 6 n.1 ("It is undisputed that the assault happened before the plane entered airspace above the Central District . . . .").

The majority's interpretation is wrong on its face and raises potential constitutional problems. By its terms, § 3237(a) is not limited to offenses that fall within the Venue Clause's exception for crimes not committed within any state. As a result, as interpreted by the majority, § 3237 will apply in a range of circumstances that raise significant constitutional concerns. A simple hypothetical shows why. Consider a rogue baggage handler standing on the tarmac at Los Angeles International Airport. As an airplane takes flight on its way to New York's John F. Kennedy International Airport, the baggage handler aims the beam of a laser pointer at the aircraft in violation of 18 U.S.C. § 39A(a), which punishes "[w]hoever knowingly aims the beam of a laser pointer at an aircraft in the special aircraft jurisdiction of the United States." Under the Venue Clause, the baggage handler's offense was committed in California, and because the Venue Clause's exception for offenses "not committed within any state" is inapplicable, it must be tried in California. And Congress cannot circumvent the Venue Clause by relabeling the baggage handler's noncontinuing action as a "continuing offense." *See Rodriguez-Moreno*, 526 U.S. at 279; *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998). Indeed, the majority agrees that the Constitution

requires this hypothetical offense to be tried in California. Maj. at 8 n.4.

But under the majority's interpretation, § 3237(a) applies to the baggage handler's crime. Like the slap in this case, the baggage handler's laser pointing "'involved' transportation in interstate commerce under [the majority's] reading of the word 'involve.'" *See* Maj. at 10. Accordingly, it is a "continuing offense," per the majority's interpretation of § 3237(a). And, likewise, § 39A(a)'s "very definition requires interstate transportation." Maj. at 10. Therefore, under the majority's reading of § 3237(a), the baggage handler has committed a "continuing offense," and he may be tried in any district "from, through, or into which such commerce . . . moves." 18 U.S.C. § 3237(a). This includes (depending upon the airplane's exact route) the District of New Mexico, the District of Kansas, the Central District of Illinois, and the Eastern District of New York. The majority agrees that such a result is inconsistent with the Venue Clause because "[t]he provision for offenses 'not committed within any state' is inapplicable," but does not reconcile this conclusion with its interpretation of § 3237(a). Maj. at 8 n.4.[16]

Because many discrete offenses "relate to or affect" interstate transportation, the majority's mistaken interpretation of § 3237(a) has a widespread effect. Maj. at 10. Even if the majority interprets § 3237(a) as applying only to statutory offenses that reference interstate

---

[16] The majority says it is "puzzled" by this hypothetical, because it is clear that the Venue Clause requires the baggage handler to be tried in California. Maj. at 8 n.4. Given that § 3237(a), as interpreted by the majority, applies to the baggage handler's offense, this amounts to an implicit acknowledgment that under the majority's reading, § 3237(a) would be unconstitutional in many applications.

transportation or an instrumentality of interstate transportation, Maj. at 10, Congress has created numerous point-in-time offenses that include such a reference, *see, e.g.*, 18 U.S.C. § 1992 (criminalizing various discrete acts against and/or involving railroad equipment and mass transportation systems); 18 U.S.C. § 33(a) (criminalizing destruction of motor vehicles or motor vehicle facilities "used, operated, or employed in interstate or foreign commerce"). Although these offenses would generally be committed within a particular state, under the majority's interpretation of § 3237(a), defendants may be tried wherever the relevant instrumentality of commerce has moved.

But more important, if § 3237(a) governs crimes that "relate to or affect" transportation in interstate commerce, Maj. at 10, and is not limited to offenses that are "continuing" because the "process of wrongdoing" continues during interstate transportation, *Johnson*, 323 U.S. at 276, then the language of the statute provides no basis to limit § 3237(a) to offenses "whose very definition requires interstate transportation." *See* Maj. 10. And absent such a limiting principle, "*any* offense involves transportation in interstate commerce so long as the interstate transportation is among the circumstances related to the commission of the offense." *United States v. Morgan*, 393 F.3d 192, 200 (D.C. Cir. 2004); *see also United States v. Cope*, 676 F.3d 1219, 1225 (10th Cir. 2012) ("[T]he government need only show that the crime took place on a form of transportation in interstate commerce." (quoting *United States v. Breitweiser*, 357 F.3d 1249, 1253 (11th Cir. 2004))). Given that it is "rare that a crime does not involve circumstances in which a person or instrumentality related to the crime has not passed through interstate commerce," *Morgan*, 393 F.3d at 200, the

majority's reading of § 3237(a) will swallow the Venue Clause.

Even when an offense is not committed within any state, like Lozoya's offense in navigable airspace, the majority acknowledges that its interpretation of § 3237(a) leads to absurd results that are inconsistent with the purposes of the Venue Clause. *See* Maj. at 12 n.8 ("We acknowledge that § 3237(a) theoretically allows venue not just in the landing district, but also the takeoff district as well as the flyover districts."). Under the majority's interpretation, for example, Lozoya could be tried in any district over which the airplane flew while traveling from Minneapolis to Los Angeles. She could have faced trial in a state where she, her accuser, and witnesses never set foot. We should not lightly assume that Congress enacted a venue rule so contrary to the Framers' intent. *Johnson*, 323 U.S. at 276; Story, *Commentaries*, § 1775.

In short, the majority's reading of § 3237(a) as providing the venue for point-in-time offenses that could occur in a single state is not plausible. It conflicts with the most natural reading of § 3237(a), which is that it provides the venue for a trial of "continuing offenses," meaning offenses that occurred in multiple states. When "choosing between competing plausible interpretations of a statutory text," we must employ the "reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381 (2005). Interpreting § 3237(a) in a strained manner that renders it unconstitutional in many instances and contrary to the Venue Clause's purposes in others violates this principle. Nor can we overlook these constitutional problems simply because applying § 3237(a) in the case before us does not violate the Venue Clause. The Supreme Court forbids us from

interpreting a statute one way in this case and another way when the constitutional problems we have invited show up at our doorstep.  Doing so "would render every statute a chameleon, its meaning subject to change depending on the presence or absence of constitutional concerns in each individual case." *Id.* at 382.

## IV

It is a mystery why the majority relies on a venue statute that obviously does not apply to discrete criminal offenses in navigable airspace, instead of a statute that has provided venue for offenses "not committed within any State" since the beginning of our nation.  Section 3238's text and history indicate that it governs those offenses, and applying § 3238 is more consistent with Article III's purposes than applying § 3237(a).  Because the majority's interpretation of § 3237(a) creates serious constitutional problems that could easily be avoided, we should adopt the construction "more consonant with the considerations of historic experience and policy which underlie those safeguards in the Constitution regarding the trial of crimes." *Johnson*, 323 U.S. at 276. Therefore, I dissent.